UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

GLADYS M. CORDOVES

CASE NO.

    Plaintiff,

Magistrate Judge:

v.

MIAMI-DADE COUNTY,
OFFICER JEAN R. POMPEE, Individually,
MYDATT SERVICES, INC d/b/a VALOR SECURITY SERVICES
SDG DADELAND ASSOCIATES, INC d/b/a DADELAND MALL,

        Defendants,

_____/

## COMPLAINT

PLAINTIFF, GLADYS M. CORDOVES by and through undersigned counsel, sues

Defendants, MIAMI-DADE COUNTY, OFFICER JEAN R. POMPEE, Individually,

MYDATT SERVICES, INC d/b/a VALOR SECURITY SERVICES and SDG DADELAND

ASSOCIATES, INC d/b/a DADELAND MALL, and allege:

## INTRODUCTORY STATEMENT

1.    This is an action for damages sustained by a citizen of the United States against

MIAMI-DADE COUNTY, Florida, and an employee police officer of Miami-Dade County,

Officer JEAN R. POMPEE (hereinafter POMPEE), who unlawfully assaulted, battered and

arrested PLAINTIFF GLADYS M. CORDOVES (hereinafter PLAINTIFF), with excessive

force without justification and in violation of PLAINTIFF's civil rights causing emotional

distress to PLAINTIFF.   PLAINTIFF brings suit against MIAMI-DADE COUNTY

(hereinafter COUNTY), as the employer of POMPEE, who are liable for his tortious conduct under the provisions of 768.28 Florida Statutes. Action is being brought against MYDATT SERVICES, INC d/b/a VALOR SECURITY SERVICES for the unlawful and unwarranted conduct of their security staff, namely security officer Alex Caminero, that caused injury to and the arrest of PLAINTIFF and emotional distress to PLAINTIFF. Finally, action is being brought against SDG DADELAND ASSOCIATES, INC d/b/a DADELAND MALL, as the employers of POMPEE in his off duty capacity and as the employers and contractors of MYDATT SERVICES, INC d/b/a VALOR SECURITY SERVICES for security services in Dadeland Mall, where the incident took place, and for having policies in violation of the Americans With Disabilities Act.

## JURISDICTION

2.    This action is brought pursuant to 42 U.S.C. § 1983, the Fourth Amendment of the United States Constitution and the laws of the State of Florida.

3.  The jurisdiction of this Court is predicated on 28 U.S. C. §§ 1331 and 1342(a)(3) and the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a).

4.   Venue is placed in the United States District Court for the Southern District of Florida because it is where all parties reside and where the events complained of occurred.

5.  All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statute Section 768.28.

## PARTIES

6.    At all times material hereto PLAINTIFF was and is a resident of Miami-Dade County

and at the time of the events described in this complaint is sui juris.

7.    Defendant, COUNTY, is a political subdivision of the State of Florida, a Florida municipal corporation, and, at all times relevant hereto, it employed Defendant POMPEE.

8.    At all times relevant hereto and in all actions described herein, Defendant, Officer POMPEE, was acting under color of law as a police officer, and in such capacity, as the agent, servant and employee of Defendant, COUNTY.

9.    Defendant MYDATT SERVICES, INC d/b/a VALOR SECURITY SERVICES (hereinafter VALOR) is a foreign for profit corporation who's principal address is located in Nashville, Tennessee and who does business in Florida as Valor Security Services. VALOR, is engaged in the business of providing security services for malls and other corporate entities.  At all times relevant hereto it employed security officers in Dadeland Mall and in particular security officer Alex Caminero, and they were under contract to provide security services for the malls patrons, business owners, employees and property.

10.   Defendant SDG DADELAND ASSOCIATES, INC d/b/a as DADELAND MALL,  is a foreign for profit corporation who's principal address is located in Indianapolis, Indiana and who does business in Florida as Dadeland Mall. SDG DADELAND ASSOCIATES, INC d/b/a DADELAND MALL (hereinafter DADELAND), is engaged in the business of non-residential property ownership and management.  At all times relevant hereto DADELAND employed VALOR and POMPEE as security in Dadeland Mall.  DADELAND also was responsible for policies that led VALOR, Alex Caminero  and POMPEE to believe it was appropriate to expel PLAINTIFF from the mall for having a service dog in violation of

federal law.

## FACTUAL ALLEGATIONS

11.     On November 14, 2010 between 3:00 and 4:00 p.m. PLAINTIFF went to Dadeland Mall to shop for domestic items.  Accompanying PLAINTIFF was her daughter Barbara Cordoves and her mother Arminda Ramirez.  The Cordoves family parked in a parking area behind the JC Penney store and entered into the mall through the JC Penney entrance.

12.     Accompanying the Cordoves women was Shiloh, a federally recognized service dog owned by PLAINTIFF.  Shiloh was prescribed for PLAINTIFF due to her disabilities of post traumatic stress, severe panic disorder and major depression recurrent.

13.      Shiloh was placed in a stroller and accompanied the women into the mall.  At all times while PLAINTIFF and her family were in DADELAND, Shiloh never left the stroller, barked or caused any disturbance.  Shiloh was also wearing a visible, clearly marked, service dog jacket.

14.     As PLAINTIFF and her family walked into the mall, they passed security guards who saw Shiloh in his stroller and those guards made no mention of Shiloh or said anything to the Cordoves women as they walked in the mall.

15.     As they left Macy's and entered the mall area going towards the food court, they saw other shoppers with doggie strollers and another service dog, which was a yellow Labrador, Retriever, walking in the opposite direction.  No one bothered or interfered with the other individuals who had their service dogs with them.

4

16.     The Cordoves' women entered in the food court and sat at a table directly in front of Johnny Rockets.  As the ladies sat down they noticed another family who had a doggie stroller that contained a Yorkie.  This family was sitting right behind the Cordoves' women. The Cordoves' began to have a conversation with the Yorkie family.  No mall personnel or security bothered the family with the Yorkie.

17.     After having conversations with the couple that had  the Yorkie, Ms. Barbara Cordoves went to order food and stood in line at Johnny Rockets.  During that time, a VALOR  security  guard,  namely  Alex  Caminero,  approached  PLAINTIFF  and  the grandmother, looked inside the stroller and told PLAINTIFF her dog was not allowed in the mall and they would have to leave.

18.     The  VALOR  security  guard,  Alex  Caminero,  never  referred  this  policy  to  the individuals who were sitting right behind them with their dog, but specifically targeted PLAINTIFF.  PLAINTIFF  then called over to her daughter Barbara Cordoves, who came back to the table and asked why her mother was being told to leave by the VALOR security guard Alex Caminero.

19.     Barbara Cordoves then asked Alex Caminero, where does it say the dog was not allowed.  The VALOR security guard Alex Caminero  then pointed to a sign by the door which had a lot of writing on it;  on the bottom in small letters the sign stated, "no pets."

20.     The sign made no exception for federally recognized service animals.

21.     The security guard was informed the dog was a service dog and PLAINTIFF directed Caminero's attention to Shiloh's service dog vest as verification.

5

22.    PLAINTIFF then began to look at the security guard's shirt in search of a name tag or identification so she could hopefully speak to his supervisor.  PLAINTIFF did not see a name tag nor any badge.

23.    PLAINTIFF then saw something on Alex Caminero's sleeve and began to walk around him to see what the company name was on his sleeve, the VALOR security guard, Alex Caminero,  kept turning away to prevent PLAINTIFF form seeing the patch.  PLAINTIFF then moved closer in order to attempt to read the sleeve and then Alex Caminero yelled very loudly "don't touch me."  At that point PLAINTIFF stated to the security guard she did not touch him.

24.    Alex Caminero then grabbed his shirt and began pulling his collar back and forth. PLAINTIFF and her family, against their will, decided to follow Caminero's order to  leave the mall to prevent any further problems with this particular VALOR security guard, Alex Caminero.  The PLAINTIFF and the Cordoves' women gathered their belongings and began to walk back to the exit where they originally entered which was in the direction of JC Penney.

25.    When they reached the corner of Godiva's, another female VALOR security guard came up to them and told them with a concerned tone to leave because no dogs were allowed and they needed to go quickly.  The women informed her they were leaving through the JC Penney exit which is where their car was parked.

26.    As PLAINTIFF and her family continued to leave, they were completely surrounded by many VALOR security guards, including Caminero and COUNTY officer POMPEE. The

PLAINTIFF's movements were restricted and she was not free to continue walking and was detained by the phalanx of VALOR security guards.   The VALOR security guards began telling PLAINTIFF and her family they needed to leave.   PLAINTIFF and her family indicated to VALOR security that they were leaving.

27.     VALOR security guards began to corral the women back towards the food court area from where they had just left.   PLAINTIFF did not give her consent to being falsely imprisoned and prevented from moving in the direction of JC Penny's.   As the women were telling VALOR security they were leaving, POMPEE turned to Alex Caminero and asked him if he wanted to arrest PLAINTIFF for hitting him -- Alex Caminero answered "yes."

28.     VALOR employee Alex Caminero knew that PLAINTIFF had not battered or assaulted him.   Further, POMPEE had not seen any actions by PLAINTIFF to give him cause to arrest PLAINTIFF.

29.     PLAINTIFF, specifically told POMPEE she did not hit anyone and in response, POMPEE told PLAINTIFF to turn around and put her hands on her head because she was under arrest.

30.     PLAINTIFF told POMPEE that Alex Caminero was not saying the truth and that POMPEE  didn't see anything.   At which point POMPEE stated "I don't have to see anything," and continued to arrest PLAINTIFF.

31.     To effectuate the arrest, POMPEE  forcibly grabbed PLAINTIFF by her wrist very tightly causing pain.   POMPEE then grabbed her left upper arm and put PLAINTIFF in a bear hug, lifted PLAINTIFF to the point where her feet did not have contact with the ground

and began to toss PLAINTIFF around like a rag doll.  POMPEE pushed PLAINTIFF back towards the food court.  At one point he slammed her up against a glass pane on the side of the Godiva store such that the glass began to vibrate.

32.     PLAINTIFF  told POMPEE  that she was not feeling well, that she is disabled; POMPEE began to laugh and mock PLAINTIFF.  PLAINTIFF once again protested that she wasn't feeling well, POMPEE was squeezing her too hard and she couldn't breathe.  The officer refused to modify his arrest technique.  PLAINTIFF began to pass out at which time the officer said she's faking and as Ms. Cordoves lost consciousness Officer Pompee threw her on the floor at which point PLAINTIFF's head impacted the floor.

33.     At this point Barbara Cordoves ran to PLAINTIFF's side telling POMPEE to get away from her mother and she immediately called 911 for emergency assistance.  POMPEE walked away towards the food court and left PLAINTIFF on the floor with the VALOR security guards pushing the remaining Cordoves family away and keeping all civilians away from the scene.  During this entire time, the dog Shiloh remained quite in his stroller and at no time was he ever out of his stroller, nor was he barking or making any disturbance.

34.     POMPEE came back with a defibrillator in his hand and gave it to another VALOR security guard to put it on PLAINTIFF.  Barbara Cordoves protested and told them not to touch her mother because she had already called fire rescue.

35.     A civilian doctor was on the scene and asked to be permitted to attend to PLAINTIFF. She was kept back by VALOR security guards but eventually due to the protest of Ms. Barbara Cordoves, VALOR guards  allowed the doctor to attend to PLAINTIFF but

refused to allow the Cordoves women to obtain the name of any witnesses there and ordered PLAINTIFF not to speak to the doctor.

36.    Paramedics arrived and took PLAINTIFF to the hospital.  POMPEE followed PLAINTIFF to Baptist Hospital and just after PLAINTIFF arrived to the emergency room, POMPEE attempted to handcuff PLAINTIFF to the bed.  POMPEE had to be forcibly removed by medical personnel as he was making PLAINTIFF more disturbed.

37.    Once Barbara Cordoves arrived at the hospital she met with a certain Officer Tomas who asked that she have her mother sign a promise to appear so they would not have to take PLAINTIFF into custody after she was released by the hospital. POMPEE was still at the hospital causing severe agitation to PLAINTIFF. Barbara Cordoves effectuated the signature by her mother and at that point the officers left the hospital.

38.    Subsequently, Officer Pompee had PLAINTIFF falsely charged with battery, resisting an officer without violence, trespass after warning and disorderly conduct. POMPEE gave false testimony to the state attorney's office at a pre-file conference in order to support the false charges to be formerly filed by the state attorney's office against PLAINTIFF.

39.    PLAINTIFF was forced to hire counsel to represent her and went to trial before the Honorable Catherine Pooler in Miami Dade County Court, after hearing the evidence, PLAINTIFF was acquitted by the court.  The court further stated that DADELAND should be sued for the treatment that befell PLAINTIFF.

40.    PLAINTIFF suffered significant injuries to the assault on her person by POMPEE

which required shoulder surgery and other medical interventions.

## COUNT I

**(Violation of Civil Rights While Acting Under The Color of Law 42 U.S.C. § 1983 - Against Defendant POMPEE, individually on behalf of PLAINTIFF)**

41.     Plaintiff repeats and realleges Paragraphs 1 through 40, and incorporates them by reference herein.

42.     This cause of action is brought by PLAINTIFF, against Defendant POMPEE for his  use of excessive force under color of law that deprived Plaintiff of constitutionally protected rights under the Fourth Amendment to the United States Constitution.

43.     Defendant POMPEE violated Title 42 U.S.C. § 1983 by inflicting severe injury upon PLAINTIFF that was grossly disproportionate to the force necessary to arrest Plaintiff in violation of her rights under the Fourth Amendment to the U.S. Constitution.

44.     Defendant POMPEE, while acting in his capacity as a police officer for COUNTY and under the color of law, did  intentionally use excessive force by grabbing, throwing and knocking PLAINTIFF unconscious in such a manner that PLAINTIFF needed surgery to attempt to repair the damage caused by POMPEE's exertion o f excessive force.

45.     POMPEE further violated the Fourth Amendment by arresting PLAINTIFF without probable cause to do so.  POMPEE had not personally witnessed PLAINTIFF commit any acts that would constitute any misdemeanor or any other crime.

    **WHEREFORE**, PLAINTIFF  prayerfully requests that this Honorable Court grant the following relief against the Defendant POMPEE:

    A.  Award compensatory damages,

    B.  Award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988,

C.  Award such other and further relief as this Honorable Court deems just.

## COUNT II

### (Assault and Battery Against Defendant COUNTY, on behalf of PLAINTIFF)

46.    PLAINTIFF  repeats and realleges Paragraphs 1 through 40, and incorporates them by reference herein.

47.    Defendant COUNTY through its employee, POMPEE intentionally caused bodily harm to PLAINTIFF  by employing a bearhug to PLAINTIFF and then throwing PLAINTIFF to the floor causing serious injury to her person.

48.    The actions of COUNTY through its employee POMPEE   aroused fear in the person of PLAINTIFF. The aforementioned assault and battery was accomplished without the consent and against the will of PLAINTIFF.

49.    PLAINTIFF has complied with the notice provisions of Florida Statutes Section 768.28 which is a condition precedent to the filing of a state tort against COUNTY.

50.    Defendant COUNTY is vicariously liable for the tortious acts of its employees that were committed within the scope and furtherance of their employment.

51.    As a direct and proximate consequence of the acts of COUNTY through its' employee, POMPEE, PLAINTIFF sustained severe physical injury, humiliation, emotional distress, pain and suffering, incurred substantial medical and other out-of-pocket expenses, and will continue to incur medical expenses in the future.

**WHEREFORE**, PLAINTIFF  prayerfully requests that this Honorable Court grant the following relief against the Defendants.

A.    Compensatory damages;

B.    Pain and Suffering;

C.    Actual damages;

D.    Any other such alternative and additional relief that appears to the Court to

be equitable and just;

## COUNT III

**False Imprisonment and False Arrest**
**Against Defendant COUNTY on behalf of PLAINTIFF**

52.    PLAINTIFF repeats and realleges Paragraph 1 through 40, and incorporates

them by reference herein.

53.    On November 14, 2010, POMPEE while acting in the course and scope of his

duties as a Police Officer employed by COUNTY arrested PLAINTIFF.   POMPEE

physically deprived PLAINTIFF of her freedom and liberty and restrained her in her

movements both at the scene of the arrest and continuing at the hospital.

54.    PLAINTIFF did not consent to the aforementioned actions of POMPEE and

said actions were against the will of PLAINTIFF.

55.    The restraint of PLAINTIFF by POMPEE  was unlawful and unreasonable in that it

was not based upon lawfully issued process of Court and POMPEE did not have a valid

warrant for the arrest of PLAINTIFF.

**WHEREFORE**, PLAINTIFF respectfully requests this Court to award:

A.    Compensatory damages;

B.    Pain and Suffering;

C.      Actual damages;

D.      Any other such alternative and additional relief that appears to the Court to be equitable and just;

## COUNT IV
### False Imprisonment
### Against Defendant VALOR on behalf of PLAINTIFF

55.    PLAINTIFF repeats and realleges Paragraph 1 through 40, and incorporates them by reference herein.

56.    On November 14, 2010, PLAINTIFF was unlawfully detained by Caminero an employee of VALOR and other VALOR security guards.  VALOR physically deprived PLAINTIFF of her freedom and liberty and restrained her movements while PLAINTIFF was in Dadeland Mall.

57.    PLAINTIFF did not consent to the aforementioned actions of VALOR, other agents and employees and said actions were against the will of PLAINTIFF.

58.    The restraint of PLAINTIFF was unreasonable and unlawful in that it was not based upon lawfully issued process of Court and VALOR did not have a valid warrant for the detention and imprisonment of PLAINTIFF.

**WHEREFORE**, PLAINTIFF respectfully requests this Court to award:

A.      Compensatory damages;

B.      Pain and Suffering;

C.      Actual damages;

D.      Any other such alternative and additional relief that appears to the Court to be

equitable and just;

## COUNT V
## False Imprisonment
## <u>Against Defendant DADELAND on behalf of PLAINTIFF</u>

59.     PLAINTIFF repeats and realleges Paragraph 1 through 40, and incorporates them by reference herein.

60.     On November 14, 2010, PLAINTIFF was unlawfully detained by Caminero, POMPEE and other VALOR security guards who were employees or agents of DADELAND.  DADELAND, through its employees and/or agents, physically deprived PLAINTIFF of her freedom and liberty and restrained her movements while PLAINTIFF was in Dadeland Mall.

61.     PLAINTIFF did not consent to the aforementioned actions of DADELAND's agents and employees and said actions were against the will of PLAINTIFF.

62.     The restraint of PLAINTIFF was unreasonable and unlawful in that it was not based upon lawfully issued process of Court and POMPEE, VALOR nor DADELAND had a valid warrant, nor reasonable basis, for the detention and imprisonment of PLAINTIFF.

**WHEREFORE**, PLAINTIFF respectfully requests this Court to award:

      A.     Compensatory damages;

      B.     Pain and Suffering;

      C.     Actual damages;

D.      Any other such alternative and additional relief that appears to the Court to
be equitable and just;


**COUNT VI**

**PLAINTIFF, against Defendant, DADELAND for Violation of
42 U.S.C. § 12101 et. seq.**

63.    PLAINTIFF reasserts and repeats the allegations set forth in paragraphs 1 through 40
and incorporates them by reference herein.

64.    This cause is brought by PLAINTIFF against DADELAND pursuant to the Americans
with Disability Act, 42 U.S.C. § 12101 et. seq. (hereinafter, "ADA").

65.      PLAINTIFF is a disabled individual within the meaning of the ADA because
PLAINTIFF has been clinically diagnosed with, and assigned a service dog to cope with,
severe panic disorder, major depression recurrent, and post traumatic stress disorder.

66.      DADELAND MALL is a private entity, because it is "not a public entity." See 42
U.S.C. § 12181.

67.    DADELAND MALL is a place of public accommodation because it is a sales or retail
establishment which has an affect on interstate commerce within the meaning of 42 U.S.C.
§ 12181.

68.    PLAINTIFF  was denied full and equal treatment by DADELAND because she was
ordered to leave the mall, pursuant to a DADELAND policy, disallowing all pets, and
PLAINTIFF was in possession of a service dog (Shiloh) to aid her in overcoming her defined

disability.

69.   DADELAND's discriminatory policy regarding pets and animals in the mall prevented PLAINTIFF, as a disabled individual, from accessing and enjoying the goods, services, and privileges that non-disabled citizens enjoy within the meaning of 42 U.S.C. s. 12182(b)(2)(A)(i)-(ii)).

70.   DADELAND discriminated against PLAINTIFF based on her above stated disability because it failed to make reasonable modification in its pet policy, practice, and procedure where such modification was necessary to afford privileges, advantages, and accommodation to PLAINTIFF, which non-disabled individuals enjoy.

WHEREFORE, PLAINTIFF respectfully requests this Honorable Court award:

A. Injunctive relief to prevent DADELAND MALL from continuing to implement and     enforce it's discriminatory policy regarding service animals in the mall;

B. Monetary damages;

C. A civil penalty against DADELAND MALL pursuant to 42 U.S.C. §12188;

D. Reasonable attorney's fees, and costs of litigation to G. CORDOVES pursuant to 42   U.S.C. §12205;

E. Any and all relief that this Honorable Court deems just and necessary.

## COUNT VII

**(MALICIOUS PROSECUTION Against Defendants POMPEE, VALOR
and DADELAND on behalf of PLAINTIFF)**

71.   PLAINTIFF repeats and realleges Paragraphs 1 through 40, and incorporates them by reference herein.

16

72.     PLAINTIFF was arrested on November 14, 2010, and falsely charged with battery, resisting an officer without violence, trespass after warning and disorderly conduct. based on the sworn testimony of POMPEE and VALOR who were employees/agents of DADELAND at the time the false statements were made.

73.     After arresting PLAINTIFF, POMPEE, VALOR and DADELAND caused a prosecution to be instituted against PLAINTIFF in the County Court, in and for Miami-Dade County.

74.     Said prosecution was instituted by POMPEE, VALOR and DADELAND without probable cause as the facts observed by POMPEE prior to arresting PLAINTIFF, and the matters known to him before the instituting of the aforementioned prosecution would not have warranted a reasonable man to believe that any criminal offense had been committed by PLAINTIFF.

75.     POMPEE, VALOR and DADELAND acted with malice in instituting the aforesaid prosecution which is implied by the lack of probable cause and/or with express malice as shown by their reckless disregard for the rights of PLAINTIFF and their personal animosity and hostility towards PLAINTIFF.

76.     No Prosecution of PLAINTIFF would have occurred but for the actions of POMPEE, VALOR and DADELAND.

77.     The criminal proceeding was resolved in favor of PLAINTIFF by an acquittal entered by a Miami-Dade County Court judge after taking testimony regarding the facts contained in this complaint.

78.     The facts of POMPEE, VALOR and DADELAND's prosecution became known to many persons who remain unknown to PLAINTIFF as a result of being made part of the public records of Miami-Dade County and appearing on court documents available to public scrutiny.

**WHEREFORE, PLAINTIFF** prayerfully requests that this Honorable Court grant the following relief against the Defendants:

    A.  Award compensatory damages,

    B.  Punitive Damages,

    C.  Award such other and further relief as this Honorable Court deems just.

## COUNT VIII

### Negligent Retention and Supervision
### Against Defendant COUNTY

79.    PLAINTIFF repeats and realleges Paragraph 1 through 40, and incorporates them by reference herein.

80.    COUNTY has a duty to provide competent, intelligent, responsible and trustworthy employees who are given the authority to use force and to terminate the freedom of citizens who they suspect may have committed crimes.  The highest standard of care needs to be taken in order to ensure that the best and most competent personnel are allowed to enforce the laws of this nation.

81.    COUNTY owes a duty to the public to retain officers who meet the standards indicated in Paragraph 80.  By failing to do so, COUNTY  has breached the duty of care to PLAINTIFF  and to the public which has caused injury to PLAINTIFF  in that PLAINTIFF was falsely imprisoned and physically assaulted and suffered emotional distress.

82.    COUNTY is also charged with responsibility of adequately supervising its employees to prevent them from either intentionally or negligently causing injury to the public due to their negligent retention and supervision of incompetent and dangerous employees who have the likelihood and/or foreseeability of injuring third persons.

83.     On the date in question, County had negligently retained POMPEE in it's employ and did not adequately discipline him, and knew the following improper actions of POMPEE that would cause a reasonable employer to terminate or severely discipline POMPEE:

a.  On January 30, 2003, POMPEE conducted a traffic stop on a certain Linton Sherwood.  Mr. Sherwood explained he lived in the area and after words were exchanged Mr. Sherwood was placed in the rear of POMPEE's police vehicle handcuffed and arrested.  Mr. Sherwood complained that he was arrested without cause.  POMPEE then took the keys from Mr. Shewood's vehicle and threw them on the backseat of Mr. Sherwood's vehicle and left the car doors unlocked and the windows down.  Officer POMPEE did not secure the vehicle and told Mr. Sherwood that he "didn't give a f _ _ _ about his vehicle."  POMPEE then drove Mr. Sherwood to a police station and inquired of other officers what he could charge Mr. Sherwood with and that he wanted a felony. After an internal affairs investigation was conducted, it was found that officer POMPEE violated MDPD Manual, Chapter 19 - Part 1- Impounded Property Section 4; failing to properly tow or secure the vehicle of an arrestee.

b.  An anonymous complaint was made approximately in July 2006 that POMPEE, for approximately for one year, was transporting his son to school in his marked police vehicle.  Further, that for approximately one year, POMPEE parked his MDPD vehicle in a designated handicapped parking space.  Finally that while driving his police vehicle to the school and illegally parking he would be wearing tee shirt, shorts and

19

sneakers.  After a Personnel Complaint Investigation was conducted it was found that all

the charged activity was sustained.

        c.  On April 23, 2007, three women, Mrs. Baez, Jones and Brown, went to

the Pleasure Emporium, located at 20600 Northwest11th  avenue in Miami.  Upon

entering POMPEE was inside and spoke to the women.  The women ignored him and

commenced shopping.  POMPEE then made a call on his cell phone and began speaking

to someone in Creole.  Mrs. Baez was able to understand Creole and POMPEE made

statements calling the women "b___ and w____s" and other derogatory words.  Mrs.

Baez explained to the other women what POMPEE was saying about them and explained

that he was asking the person on the phone to hurry and arrive as the women were

leaving.  Shortly thereafter a certain Officer Jean-Babtist arrived and spoke to the ladies.

After the ladies left POMPEE used his police computer to access the National Crime

Information Center and the Florida Criminal Information Center to obtain Mrs. Baez's

information by conducting a complete records check of her Florida license tag, acting

outside the scope of his lawful employment.  A subsequent Professional Compliance

Bureau investigation sustained the improper use of the NCIC and FCIC background

checks.

        d.  On November 24, 2008 POMPEE was working an off-duty job at Miami

Dade Community College Kendall Campus.  During the course of his assignment

POMPEE was asked to respond to the parking lot to assist MDCC security guard John

Looney who had encountered an individual in possession of marijuana.  Arriving on the

scene, Pompee initiated an investigation in the presence of Mr. Looney and took possession of a package containing suspected marijuana from a suspect identified as Jose Rodriguez.  Pompee also admitted to seeing a burnt leaf or joint in the possession of Mr. Rodriguez.  Pompee placed the bag of marijuana in his shirt pocket and at the conclusion of his off-duty shift went home to his home with the marijuana in his possession.  Officer Pompee did not report or impound the marijuana pursuant to MDPD procedures.  Mr. Looney reported Pompee's confiscation of the marijuana to MDPD. Once Pompee was contacted by MPD superiors, he stated to the superior "Sarge the kid only had a joint."  After being confronted with the fact that there was also a bag of marijuana involved, POMPEE admitted that he in fact had possession of the bag of marijuana.  After POMPEE realized his impropriety was discovered, he contacted the student who had the marijuana to meet him at the college and gave him a Promise To Appear for possession of the marijuana.  POMPEE then came to the station with the suspected marijuana, however he did not impound the marijuana joint which was never recovered by MDPD.   A Professional Compliance Bureau investigation sustained allegations that Pompee did not follow proper departmental procedures for impounding of the property and sustained a charge that Officer Pompee did not place important facts in his incident report and arrest affidavit.

84.    COUNTY knowing that POMPEE had previously demonstrated that he was not fit to wear the badge of the Miami-Dade County police department allowed him to retain employment which led to the injuries suffered by PLAINTIFF.

**WHEREFORE, PLAINTIFF** prayerfully requests that this Honorable Court grant the following

relief against the Defendants:

     A.  Award compensatory damages,

     B.     Pain and Suffering;

     C.     Actual damages;

     D. Award such other and further relief as this Honorable Court deems just.

### DEMAND FOR JURY TRIAL

     Plaintiffs demand trial by jury on all issues so triable.  Plaintiff is seeking damages in
excess of $500,000.

     Respectfully Submitted,

     s/Gregory A. Samms, Esq.
     Gregory A. Samms, Esq.
     Florida Bar No. 438863
     225 Alcazar Avenue
     Coral Gables, Florida
     (786) 953-5802 phone
     (786) 513-3191 fax
     sammslaw@gmail.com