UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-CV-20114-ALTONAGA/Simonton

GLADYS M. CORDOVES,

      **Plaintiff,**

v.

MIAMI DADE COUNTY,
OFFICER JEAN R. POMPEE, Individually,
MYDATT SERVICES, INC. d/b/a VALOR SECURITY
SERVICES, and SDG DADELAND ASSOCIATES, INC.
d/b/a DADELAND MALL,

      **Defendants.**

_____/

### MIAMI-DADE COUNTY AND OFFICER JEAN POMPEES' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Miami-Dade County (the "County") and Officer Jean Pompee ("Officer Pompee") (the County and Officer Pompee referred to collectively as, "Defendants") move to dismiss Plaintiff's First Amended Complaint ("Amended Complaint").

Plaintiff alleges claims against Officer Pompee and the County arising out of a visit she made to the Dadeland Mall (the "Mall") with her dog, Shiloh, in tow.  At some point during her visit to the Mall, Alex Caminero ("Caminero"), a mall security officer, asked Plaintiff to leave the premises because of the Mall's no-pets policy.  Plaintiff refused to leave.  Instead, she and her daughter demanded to see the policy, which Caminero provided.  Still Plaintiff did not leave. Instead, she and her daughter informed the security officer that they believed the policy was insufficient because Shiloh was a "service dog," and the policy did not allow an exception for service dogs.  Still Plaintiff did not leave.  Instead, apparently unhappy with Caminero, Plaintiff began circling the officer and searching his clothing in an attempt to learn his name.  The officer

yelled out "don't touch me."  Caminero then contacted Officer Pompee, a Miami-Dade police officer working an off-duty detail at the Mall, and reported that Plaintiff had struck him.  Officer Pompee arrested Plaintiff for battery, among other crimes.

The Amended Complaint alleges claims for false arrest, excessive force, and malicious prosecution against Officer Pompee, and assault and battery, false arrest, and negligent retention and supervision against the County.  Plaintiff is not entitled to recover from the Defendants for false arrest or malicious prosecution because of the existence of probable cause to arrest Plaintiff for the criminal activity reported by Caminero.  Further, the facts alleged fail to state a claim for negligent retention or supervision.  Finally, the force used against Plaintiff was not excessive under either federal or Florida law.  As such, the Court should dismiss the Amended Complaint against the Defendants.

## I.     FACTUAL BACKGROUND

On November 14, 2010, Plaintiff visited the Mall with her daughter and her mother.  Am. Compl. ¶ 11.  Also with Plaintiff was Shiloh, who is allegedly a "federally recognized service dog."  *Id.* at ¶ 12.  Shiloh was allegedly prescribed to Plaintiff in connection with her stated disabilities of post-traumatic stress disorder, severe panic disorder, and major depression recurrent.  *Id.*  Plaintiff pushed Shiloh in a stroller.  *Id.* at ¶ 13.

Caminero was working as a security officer for the Mall on the day in question.  *Id.* at ¶ 17.  He saw Plaintiff with Shiloh and told Plaintiff to leave because the Mall did not allow dogs. *Id.*  Plaintiff did not leave.  She called over her daughter, Barbara Cordoves ("Barbara").  *Id.* at ¶ 18.  Barbara asked Caminero why he had told her mother, Plaintiff, to leave.  *Id.*  She then asked Caminero if there was a sign that reflected the Mall's no dogs policy.  *Id.* at ¶ 19.  Caminero showed them a sign near the door which said "no pets" at the bottom.  *Id.*  Plaintiff did not

leave.  Plaintiff told Caminero that Shiloh was a service dog and showed him the dog's service vest.  *Id.* at ¶ 21.  Plaintiff began searching Caminero's shirt for some identification so that she could report Caminero to his supervisor.  *Id.* at ¶ 22.  She walked in a circle around Caminero to try to get a better look at a patch on his sleeve.  *Id.* at ¶ 23.  According to Plaintiff, Caminero tried to prevent her from seeing the patch, so she "moved in closer."  *Id.*  At that point Caminero yelled "don't touch me."  *Id.*  Plaintiff told Caminero that she did not touch him.  *Id.*  According to Plaintiff, Caminero then grabbed his own shirt, "and began pulling his collar back, in an attempt to make it appear that his shirt was disturbed."  *Id.* at ¶ 24.  Caminero then called Officer Pompee for assistance.  *See* Complaint/Arrest Affidavit attached hereto as Exhibit "A."[1]

Moments later, Officer Pompee encountered Plaintiff.  *Id.* at ¶ 27.  Officer Pompee asked Caminero if he wanted to have Plaintiff arrested for hitting him.  *Id.* at ¶ 28.  Caminero answered "yes."  *Id.*  Officer Pompee told Plaintiff she was under arrest.  *Id*. at ¶ 30; Ex. A.  Plaintiff was arrested for battery, among other things.  *Id.*  Plaintiff claims that while Officer Pompee was taking her into custody, he allegedly, "grabbed her wrist and arm tightly, lifted her up and

---

[1] The Court may consider the Arrest Affidavit at the dismissal stage because the document is a public record.  *See Sosa v. Hames*, 218 F. App'x 976, 978 n.2 (11th Cir. Feb. 28, 2007) (determining that public records that are central to the claim can be considered on a motion to dismiss); *Walker v. Prieto*, 414 F. Supp. 2d 1148, 1154 n.1 (S.D. Fla. 2006) (determining that a public record could be considered on a motion to dismiss).     The document can also be considered because it is obviously authentic and is not expressly refuted by the allegations in the Amended Complaint.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (permitting courts to consider documents that are central to the claim and obviously authentic in ruling on a motion to dismiss or for judgment on the pleadings); *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379-80 (11th Cir. 2010) (district court properly relied upon exhibits to defendant's motion to dismiss, and supporting statement of material facts, where documents were central to plaintiff's claim and undisputed as to authenticity); *Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (district court may consider public records attached to motion to dismiss); *Jackson v. BellSouth Telecomm.*, 181 F. Supp. 2d 1345, 1353-54 (S.D. Fla. 2001) (determining that a court can consider "matters of public record, items appearing in the record of the case," and documents "refer[ed] to … in the complaint and … central to the plaintiff's claim").

"began to toss [her] around like a rag doll," slammed her against a storefront and then threw her on the floor. *Id.* at ¶¶ 31, 32.  Plaintiff was allowed to sign a promise to appear and avoided any jail time following her arrest. *Id.* at ¶ 37.

## II.    MEMORANDUM OF LAW

### A.    Standard of Review

To survive a motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007).  Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted).  Rather, the facts set forth in the complaint must be sufficient to "nudge [the] claims across the line from conceivable to plausible." *Id.* at 570.

In discussing the standard of review for a 12(b)(6) motion, the Eleventh Circuit articulated the pleading standard in the following manner:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. ---,129 S. Ct. 9 1937, 1949 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, 'but we are not required to draw plaintiff's inference.' *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, 'unwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.; see also Iqbal*, 129 S. Ct. at 1951 (stating conclusory allegations are 'not entitled to be assumed true').

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260-61 (11th Cir. 2009).  The court also stated:

> More recently, in *Iqbal,* the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.' *Iqbal*, 129 S. Ct. at 1949.  A complaint must state a plausible claim

4

> for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim 'across the line from conceivable to plausible.' *Twombly,* 550 U.S. at 570, 127 S. Ct. at 1974.

*Id.* at 1261. The Eleventh Circuit then proceeded to dismiss many of the plaintiff's claims for failure to comply with the *Twombly* pleading standard. *See id.* at 1266-70. Thus, the Eleventh Circuit not only applies the *Twombly* pleading standard, but has explicitly recognized that *Twombly* mandates a higher pleading standard than that previously required under Rule 8.

**B.    Federal Claim Against Officer Pompee**

Count I appears to allege a § 1983 claim for false arrest and excessive force against Officer Pompee. Am. Compl. at ¶ 45. This claim is barred by qualified immunity. Qualified immunity completely protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates the clearly established rights of others. *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006); *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003); *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). The purpose of qualified immunity is to shield from suit "all but the plainly incompetent or those who knowingly violate the law" thereby allowing government officials to carry out their discretionary duties without fear of personal liability or harassing litigation. *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

To be entitled to qualified immunity, a defendant must first establish that he was acting within the scope of his discretionary authority.[2] *Gray*, 458 F.3d at 1303; *Dalrymple*, 334 F.3d at

---

[2] An officer acts within the scope of his discretionary authority when his conduct is undertaken pursuant to the performance of his official duties. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998). It cannot be disputed that Officer Pompee, arresting Plaintiff in response to a claim that Plaintiff battered a security guard, was acting within his discretionary authority as

995; *Cottone*, 326 F.3d at 1357-58.  Once the defendant has established that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity does not apply.  *Id.*  The U.S. Supreme Court has established a two-part test that plaintiffs must meet to pierce a government official's qualified immunity.  Under this test, the plaintiff must establish that the defendant violated a federal right and that such a right was clearly established.  *Id.*[3] Plaintiff's claim fails both prongs of this test.

1.  *Officer Pompee Maintains His Qualified Immunity Defense Against Plaintiff's Claim For False Arrest Under § 1983 Because He Had At Least Arguable Probable Cause To Arrest Plaintiff For Battery*

When probable cause exists to support an arrest, the complaining party is absolutely barred from proceeding with a claim for false arrest under section 1983.  *Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990).  Probable cause exists if the facts and circumstances within the officer's knowledge could cause him to reasonably believe "that the suspect has committed, is committing, or, is about to commit an offense."  *Von Stein v.* Brescher, 904 F.2d 572, 578 (11th Cir. 1990).

An officer will only be liable for false arrest when clearly established law indicates that the officer could *not* reasonably believe that probable cause existed for an arrest.  Plaintiff bears the burden of showing that binding case law placed Officer Pompee on notice that his alleged actions violated clearly established law.  *Sanders v. Howze*, 177 F.3d 1245, 1250 (11th Cir.

---

a police officer at all relevant times alleged in the Amended Complaint. *See Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir. 2004) (noting that an officer making an arrest is performing a discretionary function within his official responsibilities).

[3] The U.S. Supreme Court altered this test in *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). As a consequence, a federal court is now permitted to skip the first part of the test (determining whether a constitutional violation occurred), and move directly to determining whether the plaintiff has alleged a violation of clearly established law. *Id.* Indeed, as stated by the U.S. Supreme Court, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

1999); *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003) ("only Supreme Court cases, Eleventh Circuit caselaw, and [the applicable state's] Supreme Court caselaw can 'clearly establish' law in this circuit.").

In cases involving an arrest or seizure, the Eleventh Circuit has "frequently framed the 'clearly established' prong as an 'arguable probable cause' inquiry." *Poulakis v. Rogers*, 341 F. App'x 523, 526-27 (11th Cir. 2009). Thus, an officer without actual probable cause to arrest an individual may nonetheless be entitled to qualified immunity because he had *arguable* probable cause to make the arrest. *Id.* (citing *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009)). Arguable probable cause is a lower standard than actual probable cause and only requires that "under all of the facts and circumstances, an officer reasonably *could* -- not necessarily would -- have believed that probable cause was present." *Crosby v. Monroe County*, 394 F.3d 1328, 1332-33 (11th Cir. 2004) (emphasis added); *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990) (noting that the question for qualified immunity is "whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed."); *see also Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry."). Thus, as the Supreme Court has stated, "[t]he qualified immunity standard 'gives ample room for mistaken judgments'. . ." *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Briggs*, 475 U.S. at 341). "This accommodation for reasonable error exists because officials should not err always on the side of caution because they fear being sued." *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (citations omitted). Finally, "what counts for qualified immunity purposes relating to probable cause to arrest is the information

7

known to the defendant officers or officials at the time of their conduct, not the facts known to the plaintiff then or those known to a court later." *Jones*, 174 F.3d at 1283 n.4.

A battery occurs under Florida law whenever a person, "actually and intentionally touches or strikes another person against the will of the other." Fla. Stat. § 784.03; *Sada v. City of Altamonte Springs*, 434 F. App'x 845, 849 (11th Cir. 2011). An officer may arrest someone for battery when he has probable cause to believe the crime occurred. Fla. Stat. § 901.15. In the instant case, a security guard at the Mall reported a battery to Officer Pompee. Officer Pompee could rely on the witness's complaint in finding probable cause to make an arrest so long as there were no facts that would suggest that the witness' statement was inherently unreliable. *Marshall v. Regions Bank*, No. 11-24302-CIV, 2012 WL 28245, at *6-7 (S.D. Fla. Jan. 5, 2012 ) (Altonaga, J.) (holding that there was probable cause to arrest a visitor to Regions Bank based upon a bank teller's report that the visitor tried to deposit a fraudulent check). Here, Plaintiff has not alleged any facts that would suggest a reason why Officer Pompee could not rely on Caminero's statement.

Moreover, just before encountering Officer Pompee, Caminero had allegedly taken steps—grabbed his shirt and pulled his collar back—to make it appear as though he had been wrongfully attacked by Plaintiff. Finally, Caminero again confirmed, while in Officer Pompee's presence, that Plaintiff should be arrested for hitting him. Such facts are sufficient to justify a reasonable belief that Plaintiff committed the battery recounted. *Maughon v. City of Covington*, 505 F. App'x 818, 822 (11th Cir. 2013) (determining that there was probable cause to arrest the plaintiff for battery based upon the victim's statement, the fact that the victim had some scratches on her shoulder purportedly made by her assailant, and two eyewitness accounts of the encounter). The fact that Plaintiff denied any wrongdoing did not extinguish Officer Pompee's

probable cause to believe that the battery occurred.  *Sada*, 434 F. App'x at 850; *Williams v. City of Homestead*, 206 F. App'x 886, 888-89 (11th Cir. 2006).  Indeed, it is often the case that the perpetrator of a crime denies that the crime occurred.  The facts presented to Officer Pompee provided him with probable cause to arrest Plaintiff as a matter of law.  Therefore, Officer Pompee did not violate Plaintiff's constitutional rights, his qualified immunity remains intact, and the claim for false arrest against him must be dismissed.

Even if the Court finds that actual probable cause to arrest Plaintiff is lacking, Officer Pompee is still entitled to qualified immunity because he possessed, at least, arguable probable cause to make the arrest.  *Staco v. Miami-Dade County*, 536 F. Supp. 2d 1301, 1305-06 (S.D. Fla. 2008) (finding at least arguable probable cause to arrest the plaintiffs based upon the statements of the victim and witnesses).  That is, a reasonable officer *could* believe that he could make the arrest because the prevailing law at the time did not signal otherwise.

The witness here is a security guard, whose job it is to ensure the safety of the Mall and its patrons.  A reasonable officer could believe that a Mall patron, visibly upset with Caminero for evicting her from the mall on account of her alleged service dog, committed a battery against Caminero.  Such a belief is especially sound in this case given that Caminero's shirt appeared rumpled, and because nothing in the Amended Complaint suggests that Caminero's report to Officer Pompee was inherently unreliable.  *Marshall*, 2012 WL 28246, at *7; *Staco*, 536 F. Supp. 2d at 1304-06.  Finally, it is important to note that prevailing law actually ***authorizes*** an arrest under the circumstances.  Officer Pompee would have had no reason to think that by arresting Plaintiff under the circumstances he violated her clearly established rights.  Thus, his qualified immunity defense remains intact and dismissal of the false arrest claim must follow.

    2.  *The Force Used By Officer Pompee Was Not Excessive As A Matter of Law*

Plaintiff's excessive force claim is subject to dismissal because the facts alleged reflect no more force used than that which is incident to an arrest.  Courts interpreting the Fourth Amendment in the context of excessive force have long recognized that the responsibility to make an arrest necessarily carries with it the right to use some degree of physical force.  *Lee*, 284 F.3d at 1198.  In *Graham v. Connor*, the Supreme Court established that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under" a reasonableness standard.  490 U.S. 386, 395 (1989); *Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007); *Buckley v. Haddock*, 292 F. App'x 791, 793 (11th Cir. 2008) (test for excessive force is "objective reasonableness"); *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004) ("The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation.").  The central issue is thus whether an officer behaved objectively reasonably in the light of the circumstances before him.  *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002).

The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Connor*, 490 U.S. at 396.  As the Eleventh Circuit has opined:

> We do not sit in judgment to determine whether an officer made the best or a good or even a bad decision in the manner of carrying out an arrest.  The Court's task is only to determine whether an officer's conduct falls within the outside borders of what is reasonable in the constitutional sense.

*Buckley*, 292 F. App'x at 793; *see also Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008) (holding that a court must consider "whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances they faced at the time").  Recognizing that "police officers

10

are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving[,]" *Graham* emphasized that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment.'' *Connor*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (1973)).

The Eleventh Circuit "has established the principle that application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257 n.4 (11th Cir. 2000); *see also Durruthy v. Pastor*, 351 F.3d 1080, 1094-95 (11th Cir. 2003); *Jones v. City of Dothan*, 121 F.3d 1456, 1460-61 (11th Cir. 1997); *Sullivan v. City of Pembroke Pines*, 161 Fed. Appx. 906, 910 (11th Cir. Jan. 12, 2006).  In *Nolin*, the Eleventh Circuit reversed the denial of an officer's motion for summary judgment on an excessive force claim the arrestee claimed that the officer "grabbed Appellee and shoved him a few feet against a vehicle, pushed Appellant's knee into Appellee's back and Appellee's head against the van, searched Appellee's groin area in an uncomfortable manner, and placed Appellee in handcuffs."  *Id.*; *see also Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (officer's single use of a taser gun to subdue the plaintiff so as to handcuff him, causing a one-time shock effect on the "hostile, belligerent, and uncooperative" plaintiff who had "paced in agitation" around the officer and yelled at him, constituted de minimis force); *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) ("slamming" plaintiff against a wall, kicking his legs apart, requiring him to raise his arms above his head, and pulling his wallet from his pants constituted just minimal force).  Indeed, the *Nolin* Court stated that "the facts sound little different from the minimal amount of force and injury involved in a typical arrest."  207 F.3d at 1258 n. 4.

11

This Court, in *Sosa v. Hames*, 581 F. Supp. 2d 1254, 1275-76 (S.D. Fla. 2008) (Altonaga, J.), held that an officer did not use excessive force when he pointed his gun at the plaintiff, pulled him from his vehicle, and "threw him to the ground *face down*." (Emphasis added).  The amount of force used there, despite causing the plaintiff injury, was deemed "less severe than other behavior the Eleventh Circuit has determined to be reasonable and *de minimis*."  *Id.* at 1277.

In this case, Plaintiff alleges that Officer Pompee grabbed her wrists tightly, lifted her off the ground, shook her around like a rag doll, slammed her against a glass wall, and then threw her on the floor.  Am. Compl. at ¶¶ 31 and 32.  Importantly, at no point does Plaintiff allege that Officer Pompee took any action against her *after* she was handcuffed, or that she was the subject of any prolonged or gratuitous force once secured.  *Sullivan*, 161 F. App'x at 910 (holding that the officer did not use excessive force against a suspect when he "grabbed [her] arm, pulled her arms behind her back, forced her to the ground, placed his knee on her back, and handcuffed her," and noting that there were no allegations "that he hit, kicked, or used other force or that he kept her on the ground for any appreciable period of time.").  The Plaintiff in this case, like the plaintiff in *Sosa*, experienced less force than has been condoned by the Eleventh Circuit.  For these reasons, no constitutional violation occurred, and Officer Pompee is entitled to qualified immunity.

Even if the Court finds that Officer Pompee used excessive force, it is still Plaintiff's burden to show that binding case law existed at the time of the incident here that would have put a reasonable officer in similar circumstances on notice that his alleged actions violated clearly established law.  *See Sanders v. Howze*, 177 F.3d 1245, 1250 (11th Cir. 1999); *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003); *Marsh v. Butler County*, 268 F.3d 1014,

1031 n.8 (11th Cir. 2001) (en banc); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "This standard is met when every reasonable officer would conclude that the excessive force used was plainly unlawful."  *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1292 (11th Cir. 2009); *Petithomme v. County of Miami Dade*, No. 11–20525–CIV, 2011 WL 3648622, at *4 (S.D. Fla. Aug. 16, 2011).  A right is only clearly established if it "would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Sanders*, 177 F.3d at 1250.  A court cannot summarily conclude that a right was clearly established; instead, the Eleventh Circuit requires an independent analysis of the issue if a constitutional right has been violated.  *Trolley Boats, LLC v. City of Holly Hill*, No. 08-10453, 2009 WL 174946, at *3 (11th Cir. Jan. 27, 2009) (reversing district court's order denying motion to dismiss on the grounds that "that the district court did not adequately address the legal standard for qualified immunity cases in our circuit.").

The Eleventh Circuit has recognized that cases like this one, where the police are called to use "some intermediate force-between no force and deadly force-remain the cases where the law of excessive force is most ambiguous."  *Buckley v. Haddock*, 292 F. App'x 791, 798 (11th Cir. 2008).  Plaintiff was reported to have committed a battery against a Mall security officer and was admittedly upset by the fact that she had been ejected from the Mall on account of what she believed was her lawful right to have an alleged service dog accompany her on her visit.   The force used by Officer Pompee was imposed and concluded all before Plaintiff was ever handcuffed.  Under these facts, it is simply not the case that ***every reasonable officer*** would conclude that Officer Pompee's actions were unlawful.  Thus, even if the Court finds that a constitutional violation occurred, it should still dismiss the excessive force claim because

13

prevailing law did not signal that Officer Pompee's actions violated Plaintiff's clearly established rights under the Constitution.

Based upon the above facts, a reasonable officer *could* have believed that there was probable cause to arrest Plaintiff, and to use the force described in the Amended Complaint. Further, there simply is no clearly established law that would have put Officer Pompee on notice that he lacked probable cause to arrest Plaintiff based upon Caminero's report.   Likewise, prevailing law did not forewarn Officer Pompee that the force he used to arrest Plaintiff exceeded the bounds of the Constitution.   For all of these reasons, Plaintiff has failed to abrogate Officer Pompee's qualified immunity defense, and therefore the § 1983 claim against him should be dismissed with prejudice.

>        3.      *Plaintiff's Federal Claim Violates Rule 10(b)*

Plaintiff's claim under § 1983 is also flawed because it improperly alleges both that the force used on Plaintiff was excessive AND that there was no probable cause to arrest her in the same count.  *See* Count I.  This is an improper method of pleading a claim for relief under Rule 10(b).  Proper pleading instead requires that, "each count in the complaint should contain one claim founded upon a separate transaction."  *Vilceus v. City of West Palm Beach*, No. 08-80968, 2009 WL 2242604, at *5 (S.D. Fla. July 27, 2009).  Plaintiff did not plead for relief in this manner.   Since Plaintiff has improperly attempted to proceed in Count I with one § 1983 claim for both false arrest and excessive force, the Court should dismiss that count.  *Vilceus v. City of West Palm Beach*, No. 08-80968, 2009 WL 2242604, at *5 (S.D. Fla. July 27, 2009) (dismissing a §1983 claim that combined counts for false arrest and excessive force for violating Federal Rule of Civil Procedure 10(b)).

**C.      State Law Claims Against Defendants**

1.    *Probable Cause Bars Plaintiff's State Law Claims For False Arrest And Malicious Prosecution*

In Count III, Plaintiff lodges a false imprisonment and false arrest claim against the County. "The tort of 'false imprisonment' or 'false arrest' is the unlawful restraint of a person against his or her will, and the gist of the action is the unlawful detention of the person and the deprivation of his or her liberty." *Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1178 (Fla. 1st DCA 2003). Like its federal analogue, false arrest under state law is absolutely eviscerated by the existence of probable cause. *Williams*, 206 F. App'x at 889. And the standard for assessing probable cause is the same under both federal and Florida law. *Id.* (citing *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 2006)) (recognizing that summary judgment on a state law claim for false arrest was proper given a previous finding that the existence of probable cause barred the plaintiff's § 1983 claim for false arrest).

As explained at length above, Officer Pompee had probable cause to arrest Plaintiff for battery. As such, this Court should dismiss the state law false arrest claim against the County as well. *Sada*, 434 F. App'x at 851 (district court correctly found that the existence of probable cause barred the plaintiff's "federal constitutional claims and state law false arrest/false imprisonment claims.").

In Count VII, Plaintiff asserts a claim for malicious prosecution under Florida law against Officer Pompee. To maintain such a claim, Plaintiff must allege facts demonstrating that: (1) an original judicial proceeding was commenced or continued against him; (2) Officer Pompee was the legal cause of the proceeding; (3) the proceeding terminated in Plaintiff's favor; (4) ***there was an absence of probable cause for the original proceeding***; (5) there was malice on the part of Officer Pompee; and (6) Plaintiff suffered damages as a result of the proceeding. *See Miami-Dade Cnty. v. Asad*, 78 So. 3d 660, 664 (Fla. 3d DCA 2012) (emphasis added). Plaintiff's

malicious prosecution fails as a matter of law because, as described above, there was probable cause to arrest Plaintiff for battery on Caminero. *Lewis v. Morgan*, 79 So. 3d 926, 929 (Fla. 1st DCA 2012) ("[t]he existence of probable cause will defeat a claim for malicious prosecution because lack thereof is a necessary element of the claim."); *Williams*, 206 F. App'x at 889 ("our finding of probable cause forecloses Williams' malicious prosecution claim"). The Court should therefore dismiss the state law malicious prosecution claim against Officer Pompee.

2.   *Plaintiff's Negligent Retention and Supervision Claim Fails as a Matter of Law*

Plaintiff's negligent retention and supervision claim is also subject to dismissal. First, such a claim is viable only where an employee is alleged to have acted ***outside*** the scope of employment. *See City of Boynton Beach v. Weiss*, 120 So. 3d 606, 610 (Fla. 4th DCA 2013) ("[B]ecause a negligent supervision and retention claim involves the *direct* negligence of the City, it requires that the actions of the employee be *outside* the course and scope of the employee's employment.") (emphasis added); *Watson v. City of Hialeah*, 552 So. 2d 1146, 1148 (Fla. 3d DCA 1989) ("By its very nature, an action for negligent retention involves acts which are *not* within the course and scope of employment[.]") (emphasis original); *see also Johnson v. Scott*, NO. 2:13-cv-500-FtM-38UAM, 2013 WL 5928931, at *6 (M.D. Fla. Nov. 6, 2013) ("A negligent hiring, retention, or supervision claim is allowed against an employer for acts of an employee committed *outside* the scope and course of employment.") (emphasis added).

In this case, however, Plaintiff has alleged in several places that Officer Pompee's actions were in the course of his employment as an agent of the County. Specifically, Plaintiff has alleged that Officer Pompee was "acting under color of state law as a police officer," and was serving as the agent, servant, and employee of the County. Am. Compl. ¶ 8. She further alleges that Officer Pompee committed excessive force against her "while acting in his capacity as a

16

police officer" for the County (Am. Comp. ¶ 44); that the County "is vicariously liable for the tortious acts of its employees that were committed within the scope and furtherance of their employment" (Am. Compl. ¶ 50); and that Officer Pompee arrested Plaintiff "while acting in the course and scope of his duties as a Police Officer" employed by the County (Am. Comp. ¶ 53). Plaintiff's negligent hiring and retention theory does not fit this case, and is not available to Plaintiff as a matter of law.  *See Johnson*, 2013 WL 5928931, at *6; *see also Belizaire v. City of Miami*, 2013 WL 1651371, at *9 (S.D. Fla. Apr. 16, 2013) ("Because Florida law ties liability under the theory of negligent retention to acts committed outside the scope of employment, the Court grants the City's motion to dismiss."); *Weiss*, 120 So. 3d at 610 ("Because [the officer acted within scope of employment], the negligent retention/supervision claim must fail by operation of law."); *Gillis v. Sports Authority, Inc.*, 123 F. Supp. 2d 611, 617 (S.D. Fla. 2000) (dismissing claim for negligent hiring, retention, and supervision because the plaintiff, "does not allege that the TSA employees who committed this allegedly wrongful conduct were acting outside the scope and course of their employment.").

Second, under Florida law, a plaintiff attempting to plead negligent retention and supervision must show that the employer was aware "or should have become aware, of problems with an employee that indicate his unfitness," but the employer failed to take remedial action. *Gillis*, 123 F. Supp. 2d at 617.  Here, Plaintiff alleges four instances when Officer Pompee was allegedly found to have violated Miami-Dade Police Department policies.[4]   Importantly, however, none of the alleged violations would have put the County on notice that Officer

---

[4] Plaintiff alleges that Officer Pompee was allegedly found to have improperly: 1) towed or secured the vehicle of an arrestee (Am. Compl. ¶ 85a); 2) transported his son to school in a marked police vehicle (*id.* at ¶ 85b); 3) used his police computer to conduct background checks (*id.* at ¶ 85c); and 4) impounded property and failed to include facts in an incident report and arrest affidavit (*id.* at ¶ 85d).

17

Pompee was likely to make an arrest without probable cause and/or use an unconstitutional amount of force in effecting an arrest.

In *Watson v. City of Hialeah*, 552 So. 2d 1146, 1150 (Fla. 3d DCA 1989), the Third District Court of Appeal affirmed judgment in favor of the City of Hialeah against a claim for negligent retention brought by the estate of an individual who had been murdered by a City of Hialeah police officer.  The Court noted that the officers involved had "significant disciplinary problems," including filing false reports, harassing female security guards, and using their power as police officers to demand immediate medical treatment for injuries they sustained during a brawl at a nightclub.  *Id.* at 1147-48.  Despite the disciplinary records of its officers, the City of Hialeah was relieved of liability because its continued retention of the officers was not proven to be the proximate cause of the murder, nor was the murder foreseeable by the city.  *Id.* at 1149. In the words of the Third District, "an employer's liability for negligent retention is not unlimited.  There must be 'some rational basis for limiting the boundaries of that liability; otherwise an employer would be an absolute guarantor and strictly liable for any acts committed by his employee against any person under any circumstances….'"  *Id.* at 1148 (quoting *Garcia v. Duffy*, 492 So. 2d 435, 439 (Fla. 2d DCA 1986)); *see also Dickinson v. Gonzalez*, 839 So. 2d 709, 714 (Fla. 3d DCA 2003) (finding that employee's extensive disciplinary history, including a charge of falsifying records, was not admissible in a negligent retention case because it was irrelevant to the plaintiff's charge that the officer had mishandled a roadside stop and arrested her without probable cause).  Given applicable Florida law, this Court should dismiss the negligent retention and supervision claim against the County.  *See Blue v. Miami-Dade County*, No. 10-23599, 2011 WL 2447699, at *4-5 (S.D. Fla. June 15, 2011) (dismissing claim for negligent retention and supervision because the allegations failed to substantiate that the County

18

had "notice of [a former employee's] propensity to use physical force or corporal punishment against children"); *see also Total Rehabilitation & Medical Centers, Inc. v. E.B.O.*, 915 So. 2d 694, 697 (Fla. 3d DCA 2005) (directing that judgment be entered in favor of an employer because the plaintiff, who had been raped by an employee, did not establish that the employer "knew or had reason to know that its employee would commit the battery . . ."); *Stephenson v. School Bd. of Polk Cnty.*, 467 So. 2d 1112 (Fla. 2d DCA 1985) (finding that a school board was not liable for negligent supervision because there was no indication in the record that it was put on notice of the harmful propensities of its employees).

Finally, negligent retention and supervision are derivative claims, meaning that if there is no underlying tort liability, the employer faces no liability as a consequence of the employment relationship. Since there was no wrongdoing on the part of Defendants in this case, the Court should dismiss the derivative negligent retention and supervision claim against the County. *Ekokotu v. Federal Express Corp.*, 523 F. App'x 629, 632-33 (11th Cir. 2013) (affirming trial court in finding that derivative negligent retention and supervision claim failed because there was no actionable claim for a violation of Title VII); *Certainteed Corp. v. Davis*, No. 6:08-cv-1827-Orl-28DAB, 2009 WL 2605258, at *5 (M.D. Fla. Aug. 21, 2009) (dismissing claim for negligent retention against employer where underlying claims of tortious interference and intentional infliction of emotional distress against employer and supervisor were previously dismissed) (citing *Williams v. Worldwide Flight SVCS, Inc.*, 877 So. 2d  869, 871 (Fla. 3d DCA 2004)); *Quezada v. Circle K Stores, Inc.*, No. 204CV190FTM33DNF, 2005 WL 1633717, at *2 (M.D. Fla. July 7, 2005) (dismissing negligent retention claim because the underlying wrong is not actionable under Florida law).

3.      *Plaintiff's Assault and Battery Claim*

Plaintiff also sues the County for assault and battery.  However, the County faces no liability because Officer Pompee's actions were reasonable and not "clearly excessive."

"Traditionally, a presumption of good faith attaches to an officer's use of force in making a lawful arrest and an officer is liable for damages only where the force used is clearly excessive."  *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996).  The test of reasonableness under state law is not a question of fact for the jury; rather, "a state law claim of battery may be evaluated prior to trial pursuant to the facts established in the pleadings."  *See Belizaire v. City of Miami*, 2013 WL 5780396, at *6 (S.D. Fla. Oct. 25, 2013); *see also Andrade v. Miami Dade Cnty.*, 2011 WL 4345665, at *7 (S.D. Fla. Sept. 16, 2011) (Lenard, J.) (dismissing battery claim under Florida law because plaintiff had "not alleged sufficient facts to overcome the presumption of good faith afforded to [officer's] conduct"; thus, the allegations did not support inference that officer used "clearly excessive" force).

Courts interpreting Florida law have repeatedly held that the defenses to a battery claim under Florida law mirrors those available to an excessive force claim under the Fourth Amendment.  *DaSilva v. Lamberti*, No. 08-62106-CIV, 2010 WL 680925, at *1 (Feb. 24, 2010); *Sanchez v. Obando-Echeverry*, 716. F. Supp. 2d 1195, 1203 n. 8 (S.D. Fla. 2010); *Lehman v. Scott*, No. 2:08-cv-530, 2009 WL 1911070, at *13 (M.D. Fla. July 1, 2009).  Officer Pompee did not use excessive force under Eleventh Circuit case law for the reasons outlined above, and for those same reasons his actions were not clearly excessive under Florida law.  *Sullivan v. City of Pembroke Pines*, 161 F. App'x 906, 911 (11th Cir. 2006) (noting that, "[f]or the same reasons we concluded that the force used by Scopa was not clearly excessive under the law of this Circuit, we also conclude that it was not clearly excessive according to the similar standard set forth under Florida law.").

### III.    CONCLUSION

Plaintiff was admittedly involved in an emotional exchange with a mall security officer regarding the presence of her alleged service dog in the Mall.  The security officer asked her to leave.  The same security officer then reported to Officer Pompee that Plaintiff struck him.  At that point, Officer Pompee had probable cause to arrest Plaintiff for battery and properly did so using no more than *de minimis* force.  Accordingly, all claims against Officer Pompee and the County should be dismissed with prejudice.


Dated: February 24, 2014                Respectfully submitted,

                                        R.A. CUEVAS, JR.
                                        MIAMI-DADE COUNTY ATTORNEY

                        By:     s/ Erica S. Zaron
                                Erica S. Zaron
                                Assistant County Attorney
                                Florida Bar Nos. 0514489
                                Miami-Dade County Attorney's Office
                                111 N.W. 1st Street, Suite 2810
                                Miami, Florida 33128
                                Telephone: (305) 375-5151
                                Facsimile: (305) 375- 5611
                                Email: zaron@miamidade.gov


### CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served on February 24, 2014, on all counsel or parties of record in the manner indicated on the Service List below.


                                        s/ Erica Zaron

21

**SERVICE LIST**

*Gladys M. Cordoves v. Miami-Dade County, et al.*
Case No.: 14-20114-CIV-ALTONAGA

Gregory Antonio Samms, Esq.
Email: sammslaw@gmail.com
225 Alcazar Avenue
Coral Gables, FL  33134
Telephone: (786) 953-5802
Fax:  (786) 513-3191
Attorney for Plaintiff
***Service by Notice of Electronic Filing***

Erica S. Zaron, Esq.
Assistant County Attorney
E-Mail:  zaron@miamidade.gov
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 NW 1st Street, Suite 2810
Miami, FL 33128
Telephone:   (305) 375-5151
Fax:   (305) 375-5611
Attorney for: Miami-Dade County *and*
         Officer Jean R. Pompee
***Service by Notice of Electronic Filing***

John Archibald Campbell, III, Esq.
Email: jacampbell@wickersmith.com
Patrick K. Dahl, Esq.
Email: pdahl@wikersmith.com
Wicker Smith O'Hara McCoy & Ford, P.A.
515 East Las Olas Boulevard
Suite 1400
Fort Lauderdale, FL  33301
Telephone: (954) 847-4800
Facsimile: (954) 760-9353
Attorney for Defendant Mydatt Services, Inc.
d/b/a Valor Security Services *and* SDG
Dadeland Associates, Inc. d/b/a Dadeland
Mall
Telephone:  (954) 847-4800
Fax:  (954) 760-9353
***Service by Notice of Electronic Filing***